# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**TYRONE CURLEE,**
      **Plaintiff,**

  v.                                                                     Case No. 18-C-21

**RACHELL E CALLAHAN,**
**JOHN MATZ,**
**OFFICER TODD CHRISTOPHERSON,**
**ARAMARK FOOD SERVICE,**
**GAIL DOE,**
**SERGEANT WEISSE,**
**NURSE BEVERLY,**
**NURSE KATRINA,**
**NURSE BERRY,**
**DOCTOR KEN,**
**NURSE CARRIE,**
**DOCTOR SHARPIRO,**
**DEPUTY VIERQUTZ, and**
**JOHN AND JANE DOES,**
      **Defendants.**

---

## ORDER

Plaintiff Tyrone Curlee, a state prisoner who is representing himself, filed a complaint under 42 U.S.C. § 1983 alleging that defendants violated his constitutional rights by denying him adequate medical care. Docket No. 1. He also filed a motion for leave to proceed without prepayment of the filing fee. Docket No. 2.

This case was originally assigned to U.S. Magistrate Judge Duffin. However, because not all parties have had the opportunity to consent to magistrate judge jurisdiction, the case was reassigned to a District Judge for screening.

Plaintiff has been assessed and paid an initial partial filing fee of $20.50. *See* 28 U.S.C. § 1915(b)(1). Therefore, I will grant his motion to proceed without prepayment of the filing fee.

Turning to plaintiff's complaint, I am required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). I must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

To state a cognizable claim under the federal notice pleading system, plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). It is not necessary for plaintiff to plead specific facts and his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). However, a complaint that offers mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when [] plaintiff pleads factual content that allows the court to draw the reasonable inference that [] defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The complaint's allegations "must be

enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted).

In considering whether a complaint states a claim, I follow the principles set forth in *Twombly* by, first, "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Legal conclusions must be supported by factual allegations. *Id*. If there are well-pleaded factual allegations, the court must, second, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

To state a claim for relief under 42 U.S.C. § 1983, plaintiff must allege that: 1) he was deprived of a right secured by the Constitution or laws of the United States; and 2) the deprivation was caused by defendants acting under the color of state law. *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (citing *Kramer v. Village of North Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004)); *see also Gomez v. Toledo*, 446 U.S. 635, 640 (1980). I am obliged to give *pro se* plaintiff's allegations, "however inartfully pleaded," a liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

## I. ALLEGATIONS

At all times relevant, plaintiff was housed in, and defendants were employed or conducted business with, the Winnebago County Jail. Plaintiff alleges that in June 2016 he suffered a serious knee injury and underwent surgery. Around September 14, 2016, plaintiff submitted a health services request form (HSU form) noting that he did not receive bags of ice two times daily, as needed, for his knee and ankle as prescribed for September 9-11, 2016. He stated that his knee and ankle were "severely swollen and in

3

pain" and that "he shouldn't have to continue writing for proper pain medication, and ice." Docket No. 1, ¶¶ 22-23. Plaintiff states that Defendant APNP Katrina's response to the request was that "she had ordered ice twice daily for two weeks, that even if it came as a bag of water, just use it, it's better than nothing." *Id.*, ¶ 24.

On September 28, 2016, plaintiff submitted an HSU form complaining of burning in his knee. Plaintiff states that Katrina's response to this request was "you are using ice, and taking ibuprofen, has your pain changed? Is it worse or different than on September 14, 2016?" *Id.*, ¶ 25.

On September 29, 2016, plaintiff submitted an HSU form asking to be seen by a nurse for his knee. Plaintiff states that the nurse responded.

On October 14, 2016, plaintiff submitted an HSU form asking "if he could continue to receive ice, as needed two times daily, as it was what was keeping the pain down." *Id.*, ¶ 27. Plaintiff states that defendant RN Carrie responded that "Dr. Shapiro did not give any new orders or any follow-up instructions; that the ice [was] for his recent injuries here in the jail; that Dr. Shapiro did not send anything back with plaintiff stating any new complications." *Id.*, ¶ 28. Plaintiff notes that the response was signed by Katrina.

On October 14, 2016, plaintiff sent an HSU form for renewal of his ice and information on his upcoming medications. Plaintiff states that Defendant RN Beverly responded on October 20, 2016, that "funds are being deducted the day you are seen, that when meds are ordered and they come in, you're charged at that time." *Id.*, ¶ 29. He asserts that she also stated she renewed plaintiff's receipt of ice through the weekend and the NP would review the prescription on the coming Monday.

4

On October 19, 2016, plaintiff submitted an HSU form asking for his Tylenol prescription to be continued because of his "intense pain." *Id.*, ¶ 20. Plaintiff notes the HSU's receipt of his request.

Around November 3, 2016, plaintiff submitted an HSU form complaining that he had been charged a $7.50 co-pay charge despite not receiving any ice or having an exam. Plaintiff states that Carrie forwarded the form to Beverly, who responded on November 4, 2016. He says that Beverly stated that "the doctor did not approve the ice, although she did advocate for plaintiff" and that she "called the pod before he came, to ask if he wanted to be seen." *Id.*, ¶ 21.

On November 4, 2016, plaintiff asserts that Beverly informed him that she had spoken with the NP about plaintiff's medication. Plaintiff alleges she noted that "they would be calling a doctor to see if they wanted to have him to continue on that med or replace it." *Id.*, ¶ 30.

Around November 30, 2016, plaintiff sent an HSU form concerning his knee burning from a "fall 2-weeks ago. He could not stand on it and his knee was swollen and still hurt." *Id.*, ¶ 33. He asked for "something to take the pain away." *Id.* He states Katrina responded on November 30, 2016, that "a fall at the point of healing could set him back a few weeks. To elevate his knee, take Tylenol, gentle rub motion, and don't play basketball." *Id.*, ¶ 34.

On December 14, 2016, plaintiff submitted an HSU form complaining of weakness in his left leg, shakiness, and difficulty breathing. He states Beverly's response to the request was that plaintiff had been "seen and assessed." *Id.*, ¶ 36.

On December 17, 2016, plaintiff submitted an HSU form complaining that he had not received a pillow to elevate his leg. He notes that on December 19, 2016, Katrina responded that "[plaintiff] was ok for pillow to elevate leg." *Id.*, ¶ 38.

On January 9, 2017, plaintiff submitted an HSU form noting that he believed the care he received was "constitutionally deficient in regards to his knee" and that he was still requesting ice, physical therapy, and relevant medication. *Id.*, ¶ 39. He states that Beverly responded that "she was confused that plaintiff had been receiving very good care, that he had been seen by doctors and NP's that he has also been sent out to see his own doctor, that his care has been more than adequate, and that he was given exercises from physical therapists." *Id.*, ¶ 40.

On January 12, 2017, plaintiff submitted a request to informally resolve a grievance because he was being denied "physical therapy, ice, and medication." *Id.*, ¶ 59. Plaintiff alleges defendant Sergeant Weisse responded, "You have been sent out to your own doctor. You've been seen by WCJ HSU staff. You continue to play basketball and are not following WCJ HSU advice. Grievance denied." *Id.*

On January 13, 2017, plaintiff submitted another request stating that "the first time he got no response where he was attempting to informally resolve a grievance for denial of physical therapy, ice, his medications, and medical care." *Id.*, ¶57. The response plaintiff received referred him to Weisse's response issued on January 12.

On January 17, 2017, plaintiff requested to grieve the matter regarding his knee and noted that he had already attempted to solve the matter informally. He stated that he was requesting "physical therapy, ice, medical care, and medication for his knee and

6

was denied them and more in response to his medical needs." *Id.*, ¶55. Plaintiff's request was denied because it had been previously looked into and denied.

On January 21, 2017, plaintiff submitted an HSU form to see a doctor regarding his knee. "It was forwarded NP for review." *Id.*, ¶ 42.

On January 31, 2017, plaintiff submitted an HSU form stating that he had not been receiving his ice two times a day and that his knee was hurting and swollen. Plaintiff states that Beverly responded "that plaintiff was seen by Dr. Ken and that the record disk place in property, some paper copies reviewed with DOC and copies given." *Id.*, ¶ 44.

Plaintiff wrote an HSU form on February 6, 2017, complaining that "the gel was not working, that his knee was still swollen, and filled with pain, and that his knee is weaker." *Id.*, ¶45. He asserts Beverly responded by telling plaintiff that if he wanted to see the doctor again he would have to wait until the following week; otherwise, plaintiff could be seen sooner by a nurse practitioner. Plaintiff states that the nurse practitioner had seen him several times already.

On February 12, 2017, plaintiff sent an HSU form "complaining of multiple things" and requesting to speak with a doctor regarding his knee and blood clot medication because Katrina had allegedly taken him off of the meds. *Id.*, ¶ 31. Plaintiff states that Beverly responded on February 14, 2017, that Katrina did not take him off the blood thinners, but that his doctor had ordered it. Plaintiff's other complaints were forwarded to Katrina for review.

On April 6, 2017, plaintiff chipped his tooth on a piece of metal while eating, which caused severe pain. Plaintiff asserts that Beverly responded to his HSU form

7

about the injury stating that "they could address the pain, but the jail would not send him out to have his tooth repaired." *Id.*, ¶ 53. She noted that "if it caused him pain, HSU can see [him]," that "plaintiff did not mention anything in [his] slip," and that "Aramark would be responsible for paying for plaintiff's tooth repair when he is released." *Id.*, ¶¶ 53-54.

Around May 1, 2017, plaintiff was involved in some unknown altercation. He wrote an HSU form stating that the inside of his lip would not stop bleeding, that his knee hurt, and that his right eye was hurting. Plaintiff states that Carrie responded to plaintiff that he had been "seen by HSU after the altercation, [his] lip did not need stitches…, [his] eye [would] hurt for a few days…, and [he had been] given ice for his knee." *Id.*, ¶ 51. He asserts she further noted that plaintiff had been given Tylenol and that there was nothing else she could provide.

On May 15, 2017, plaintiff wrote an HSU form informing it of his pain in his right knee, swelling, and asking to be seen. He states Beverly responded asking whether plaintiff wanted to be seen by a nurse practitioner or a doctor.

The plaintiff seeks compensatory and punitive damages.

## II. DISCUSSION

"The Eighth Amendment safeguards the prisoner against a lack of medical care that 'may result in pain and suffering which no one suggests would serve any penological purpose.' " *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009) (quoting *Estelle*, 429 U.S. at 103). To establish liability for deficient medical care under the Eighth Amendment, a prisoner must show: 1) that his medical need was objectively serious; and 2) that the state official acted with deliberate indifference to the prisoner's health or safety. *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015).

8

"Deliberate indifference may occur where a prison official, having knowledge of a significant risk to inmate health or safety, administers "blatantly inappropriate" medical treatment…acts in a manner contrary to the recommendation of specialists…or delays a prisoner's treatment for non-medical reasons, thereby exacerbating his pain and suffering." *Id.* at 777 (citations omitted).

At this stage, I find that plaintiff has sufficiently alleged that he has objectively serious medical conditions, a knee injury and a chipped tooth. Thus, I must determine whether plaintiff has also sufficiently alleged that the defendants acted with deliberate indifference to those medical conditions.

Plaintiff asserts that Beverly, Katrina, and Carrie responded to one or more of his various HSU forms submitted between September 2016 and May 2017 concerning his serious medical conditions. Although the "receipt of some medical care does not automatically defeat a claim of deliberate indifference," *Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007), the plaintiff does not allege any facts supporting a claim that these defendants' responses to his HSU forms were "blatantly inappropriate", that they "acted in a manner contrary to the recommendation of specialists," or that they "delayed his treatment for non-medical reasons, thereby exacerbating his pain and suffering," Perez, 792 F.3d at 777 (citations omitted). To the contrary, plaintiff notes that these defendants used their professional judgment to directly respond to the concern he specified in his complaint in accordance with his doctor's orders either the day of or within a day of his submitting his HSU form. To the extent plaintiff is asserting that he disagreed with the responses provided, "disagreement with medical professionals about treatment needs does not state a cognizable Eighth Amendment claim under the

9

deliberate indifference standard of *Estelle v. Gamble*, 429 U.S. 97 (1976)." *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003). Thus, plaintiff may not proceed on a deliberate indifference claim against Beverly, Katrina, or Carrie.

Plaintiff has also not sufficiently alleged a deliberate indifference claim against defendant Weisse. He asserts that he submitted informal grievances to defendant Weisse regarding his medical issues and that Weisse denied those grievances. However, plaintiff notes Weisse denied the informal grievance because plaintiff was not "following HSU advice." Docket No. 1, ¶ 59. "Prison officials who are not medical professionals are entitled to rely on the opinions of medical professionals." *Lee v. Young*, 533 F.3d 505, 511 (7th Cir. 2008). To the extent plaintiff is claiming that Weisse did not allow him to formally grieve his medical claim, that is not a constitutional violation and therefore also does not state a claim. *See Williams v. Mierzejewski*, 401 F. App'x 142, 144 (7th Cir. 2010) (a violation of state laws or regulations is not a basis for a federal civil rights suit). Thus, plaintiff may not proceed on a deliberate indifference claim against Weisse.

Lastly, plaintiff names Rachell E Callahan, John Matz, Officer Todd Christopherson, Aramark Food Service, Gail Doe, LPN Berry, Dr. Ken, Dr. Sharpiro, Deputy Vierqutz, John and Jane Does as defendants in the caption of his complaint, but he does not state what these individuals did, or what they failed to do, to violate his rights. There is no liability under section 1983 unless the defendant is personally involved in the violation of plaintiff's rights. *See Morfin v. City of East Chicago*, 349 F.3d 989, 1001 (7th Cir. 2003). Therefore, plaintiff also may not proceed on any claim against these defendants.

## III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that plaintiff's motion for leave to proceed without prepayment of the filing fee (Docket. No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED** under 28 U.S.C. §§1915(e)(2)(B) and 1915A(b)(1) because the complaint fails to state a claim.

**IT IS FURTHER ORDERED** that the Clerk of Court document that this inmate has incurred a "strike" under 28 U.S.C. § 1915(g).

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly.

**IT IS ALSO ORDERED** that the agency having custody of plaintiff shall collect from his institution trust account the $329.50 balance of the filing fee by collecting monthly payments from plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency shall clearly identify the payments by the case name and number. If plaintiff transfers to another county, state, or federal institution, the transferring institution shall forward a copy of this order, along with plaintiff's remaining balance, to the receiving institution.

**IT IS ALSO ORDERED** that copies of this order be sent to the warden of the institution where plaintiff is confined and to Corey F. Finkelmeyer, Assistant Attorney General, Wisconsin Department of Justice, P.O. Box 7857, Madison, Wisconsin, 53707-7857.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court

a notice of appeal within 30 days of the entry of judgment. *See* Fed. R. of App. P. 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Fed. R. App. P. 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within 28 days of the entry of judgment. The court cannot extend this deadline. *See* Fed. R. Civ P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin, this 23rd day of May, 2018.

                                              s/Lynn Adelman_____
                                              LYNN ADELMAN
                                              United States District Judge